IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DEBBIE K. "DEB" GRUVER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CHIEF GIDEON CODY, )<br>MARION, KANSAS POLICE DEPARTMENT, )<br>In his individual capacity. )<br>)<br>Defendant. )<br>_____) | Case No. 23-1179-DDC-BGS |

## ANSWER OF CHIEF GIDEON CODY

Defendant, Chief Gideon Cody hereby answers Plaintiff's Complaint as follows:

1. All allegations of the Complaint not expressly admitted herein are denied.

2. Defendant Cody denies all conclusory statements alleged in paragraph 1 of Plaintiff's Complaint. Cody admits that after a criminal investigation into alleged crimes committed by Phyllis Zorn, Eric Meyer, Ruth Herbel and Pam Maag, Cody worked with the Marion County Sheriff's Department, the Kansas Bureau of Investigation and the Kansas Department of Revenue to develop affidavits of probable cause to support requests for search warrants.

Cody, Marion Police Department officers, Marion County Sheriff Deputies and other law enforcement personnel executed search warrants at three locations on August 11, 2023.

3. Defendant Cody denies all conclusory statements alleged in paragraph 2 of Plaintiff's Complaint. Defendant Cody admits that Search Warrants were issued for three locations on August 11, 2023, and that he went to all three locations to aid in the execution of the warrants. Joan Meyer's death was documented by the local coroner and all facts related to Ms.

1

Meyer's medical condition should be limited to those facts.

4. Defendant Cody denies all conclusory statements alleged in paragraph 3 of Plaintiff's Complaint. Defendant Cody admits that Search Warrants were issued for three locations on August 11, 2023, and that he went to all three locations to aid in the execution of the warrants.

During the search warrant execution Phyllis Zorn admitted she downloaded a private citizen's driving record on her work computer, advising the law enforcement officers on scene which computer she used to download the citizen's driving record.

5. Defendant Cody denies the contents of paragraph 4.

6. Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraphs 5-10 of Plaintiffs' Complaint, and therefore denies the same.

7. Defendant Cody admits the statements alleged in paragraph 11 of Plaintiff's Complaint. Defendant Cody lacks sufficient information to specifically admit the ownership status or structure of who owns the restaurants referenced by Plaintiff.

8. Defendant Cody admits in part the allegations in paragraph 12 of Plaintiff's Complaint. Cody admits he worked for the Kansas City, Missouri Police Department for 24 years and that he had served at the rank of Captain. Defendant Cody lacks information as to when the *Marion County Record* confirmed any information about his application or hiring as police chief at the Marion Police Department.

9. Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraph 13 of Plaintiffs' Complaint, and therefore denies the same.

10. Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraph 14 of Plaintiffs' Complaint, and therefore denies the same. Defendant

Cody has attempted to obtain his own comprehensive personnel records from the Kansas City, Missouri police department ("KCMOPD") and has been denied this request.

11. Defendant Cody denies the allegations set forth in paragraph 15 as the language in this paragraph is vague and subject to a multitude of interpretations. Cody denies ever being accused of or participating in "misconduct". Cody admits and recalls that during his 24 year career, he received discipline from KCMOPD for the following policy violations: (1) for using lights but not sirens when proceeding through an intersection; (2) for repeatedly calling a murder suspect's cell phone to try to convince him to surrender; (3) for using curse words against a subordinate that had broken chain of command and obeyed a direct order from him; (4) participating in a police car chase and (5) telling an inappropriate joke.

12. Defendant Cody denies the allegations set forth in paragraph 16.

13. Defendant Cody admits the allegations set forth in paragraph 17-19.

14. Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraph 20-25 of Plaintiffs' Complaint, and therefore denies the same.

15. Defendant Cody admits the allegations in paragraph 26 of Plaintiffs' Complaint. On August 11, 2023, Phyllis Zorn advised Defendant Cody during the search warrant execution that she had downloaded driving records about Kari Newell from the internet and told him which computer she had used to download the record. Defendant denies that Zorn's actions were lawful.

16. Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraph 27 of Plaintiffs' Complaint, and therefore denies the same.

17. Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraph 28 of Plaintiffs' Complaint, and therefore denies the same.

During the very initial stages of the internal criminal investigation, Chief Cody asked his police department staff to research whether or not the driving record in question was a public or private document. Officer Hudlin of the Marion Police Department initiated a phone call to the Kansas Department of Revenue ("KDOR") wherein Hudlin was advised that the record in question was not a public record. Hudlin believes that he spoke to Garrett Kaufmann and/ or Desiree Perry with the KDOR "business unit." A female from the KDOR advised Officer Hudlin on August 7, 2023, that she could see from her review of internal KDOR data that on August 4, 2023, a "Phyllis Zorn" had downloaded records from the KDOR website and then three minutes later "Kari Newell" downloaded records from the KDOR website. Hudlin reported the information from this phone call to Chief Cody. Zorn's actions were unlawful.

18.     Defendant Cody denies the allegations set forth in paragraph 29 of Plaintiff's Complaint that Zorn's actions were lawful. In fact, Zorn's actions were absolutely unlawful under the DPPA and state-law criminal statutes.

19.     Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraph 30 of Plaintiffs' Complaint, and therefore denies the same. Defendant Cody admits that he spoke to Kari Newell on August 7, 2023, that he was concerned that her personal information had been stolen.

20.     Defendant Cody admits that Kari Newell addressed the city council at its meeting on August 7, 2023, and used the words in quotation marks in Plaintiff's Complaint as outlined in paragraph 31 of Plaintiff's Complaint. The remaining allegations in paragraph 31 are denied.

21.     Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraph 32-34 of Plaintiffs' Complaint, and therefore denies the same.

22.     Defendant Cody admits some of the allegations in paragraph 35 of Plaintiffs'

4

Complaint. Defendant Cody does not have any biographical information on Judge Viar's appointment as a magistrate judge.

The Applications for Search Warrant taken by the County Attorney's office to Judge Viar for approval had been drafted in part by Marion County Sheriff deputies; reviewed in whole or in part by Kansas Bureau of Investigation Agent Todd Leeds and his KBI supervisor Bethanie Popejoy; discussed at length with County Attorney Joel Ensey; discussed in meetings with law enforcement representatives from the Marion Police Department, Marion County Sheriff's Department, the Kansas Bureau of Investigation; and discussed in emails with the Kansas Department of Revenue. All the above law enforcement agencies were aware of the investigation (which started in earnest on August 7, 2023) into the *Marion County Record* and the concerns about the potential crimes committed related to identity theft and unlawful use of computers.

KBI Agent Leeds specifically opened a KBI case file and received authority from his supervisor Bethanie Popejoy to assist Cody and participate in the criminal investigation. The KBI never advised Cody that his search warrant affidavits or the draft search warrants themselves lacked probable cause or were in anyway improper.

On August 8, 2023, Chief Cody sent County Attorney Joel Ensey an email outlining potential criminal statutes that had been violated and a general summary of the facts that Cody believed would support finding that a crime had been committed. Shortly after this email, Cody met with Ensey who gave his approval to move forward with the investigation. Ensey called a meeting with the above-named law enforcement agencies. Despite participating in emails and meetings, Ensey has since advised Chief Cody that he did not actually read the documents that Cody sent to him including the draft search warrant affidavits and search warrants which were sent to him.

Many emails were circulated around these law enforcement agencies for the next three days (August 9-11, 2023) including drafts of probable cause affidavits and discussing the investigation. At no time did any other law enforcement agency involved or the prosecutor (Ensey) advise Chief Cody that probable cause did not exist to believe that a crime had been committed. At no time did any other law enforcement agency or the prosecutor (Ensey) advise Chief Cody that they should not proceed forward with a search warrant or instead merely send subpoenas to obtain evidence of the crimes committed.

23. Defendant Cody denies the allegations in paragraph 36 of Plaintiffs' Complaint as it relates to the allegations that Cody was "knowingly under investigation" by Ms. Gruver. Plaintiff Gruver and Defendant Cody exchanged many emails in the weeks and months before August 11, 2023, about his work history, interviews about new officers in the department and a variety of other matters. To date, Defendant Cody's email account contains absolutely no emails with Plaintiff Gruver outlining her "investigation" into "alleged prior misconduct" by Cody.

24. Defendant Cody denies the allegations in paragraph 37 of Plaintiffs' Complaint.

25. Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraph 38 of Plaintiffs' Complaint, and therefore denies the same.

26. Defendant Cody admits the allegations in paragraph 39 of Plaintiffs' Complaint. However, this did not invalidate the search warrants.

27. Defendant Cody admits the allegations in paragraph 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, and 50 of Plaintiffs' Complaint and notes that the affidavit contents speak for themselves. Cody denies any allegation that Zorn's actions were lawful under federal or state law.

28. Defendant Cody admits the allegations in paragraph 51 of Plaintiffs' Complaint except that the exact time is uncertain. Defendant Cody in answering further notes that Judge

6

Viar denied Chief Cody's search warrant request for the residence of Pam Maag.

29. Defendant Cody admits in part and denies in part the allegations in paragraph 52 of Plaintiffs' Complaint. Defendant Cody admits he is visible in the photograph. Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraph 52 related to whether he was "conducting" anyone's actions; the location of Plaintiff's desk; other details about the office and therefore denies the same.

30. Defendant Cody denies the argumentative conclusory language used in paragraph 53 of Plaintiff's Complaint.  Defendant admits that he participated in the execution of a lawfully obtained search warrant and that he participated in this search with officers of his department, Sheriff deputies from the Marion County Sheriff's Office and with one part time deputy of the state fire marshal's office.

31. Defendant Cody denies the allegations in paragraph 54 of Plaintiffs' Complaint. The exact recording of the interaction between the parties is as follows:

Cody: Is there anybody else inside?

Gruver: Inside?

Cody: Inside the building.

Gruver: Yeah, Cheri is.

Cody: Is Eric not here?

Gruver: Eric's not here, no.

Cody: This is why we are here [Hands Plaintiff the search warrant]

Gruver: Okay.

Gruver: Let me call Eric.

Cody: Off the phones.

    Gruver: What?

    Cody: We got all electronic devices.

    Cody: We got all electronic devices.

    Gruver: Why are you taking my phone? My personal phone.

    Cody: Please read that.

    Cody: I'll be back out to talk to you guys momentarily.

    32.    Defendant Cody denies the allegations in paragraph 55 of Plaintiffs' Complaint. Cody told Gruver not to contact anyone on her phone during the search warrant process. Gruver ignored this request and began to dial the phone to call Eric Meyer. When Gruver ignored this request, Cody confiscated her phone to preclude Gruver from advising Meyer about the police search because at the same time other officers were meeting with Meyer at his home.

    Eric Meyer was at his home at this time. Deputy Mercer's report advises that during this time, Meyer left his home with a folder of papers. Deputy Mercer asked Meyer to leave the papers which Meyer advised him were just personal documents and bills. Deputy Mercer again requested Meyer leave the folder with law enforcement officers, which Meyer eventually did. During the search of this location, law enforcement officers opened the folder and located emails and the KDOR records including the letter with the private information about Kari Newell.

    33.    Defendant Cody admits that Plaintiff's cell phone was taken directly from her "person". Defendant Cody lacks sufficient information to either admit or deny the remaining allegations in paragraph 56 of Plaintiffs' Complaint, and therefore denies the same.

    34.    Defendant Cody denies the allegations in paragraph 57-60 of Plaintiffs' Complaint.

    35.    Defendant Cody admits the allegations in paragraph 61 of Plaintiffs' Complaint.

Answering further, Defendant Cody had assistance on the search of the *Marion County Record* offices from a cyber-crime deputy from the Marion County Sheriff's Office. This deputy attempted to merely pull data from Phyllis Zorn's computer for almost two hours before any computers or phones were removed from the office. The wireless internet and other data was so slow to download onto the deputy's equipment that the deputy advised Chief Cody that it would be much faster for him to merely take any equipment that was *possibly* involved in the illegal download back to the deputy's office and search the equipment at his station. Only after hours of failed attempts by the deputy to secure data from the computers onsite at the *Marion County Record,* did the law enforcement officers decide to remove the computers and cell phones.

36. Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraph 62 of Plaintiffs' Complaint, and therefore denies the same.

37. Defendant Cody admits the allegations in paragraph 63 of Plaintiffs' Complaint.

Answering further, Defendant Cody advises that his search at the Meyer home was conducted in approximately 12 minutes and his search at the Herbel home was conducted in approximately 30 minutes.

38. Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraph 64 of Plaintiffs' Complaint, and therefore denies the same.

39. Defendant Cody admits that he spoke to Plaintiff Gruver at the Marion County Sheriff's Office on August 11, 2023, after the search was conducted. Defendant Cody lacks sufficient information to either admit or deny the remaining allegations in paragraph 65 of Plaintiffs' Complaint, and therefore denies the same.

40. Defendant Cody admits that he spoke to Plaintiff Gruver at the Marion County Sheriff's Office on August 11, 2023, after the search was conducted. Defendant Cody lacks

sufficient information to either admit or deny the remaining allegations in paragraph 66 of Plaintiffs' Complaint, and therefore denies the same.

41. Defendant Cody denies the allegations in Plaintiff's Complaint paragraph 67 and further denies making any comments to Plaintiff "with a grin."

42. Defendant Cody admits the allegations in Plaintiff's Complaint paragraph 68 that international news coverage occurred and answering further notes that he has received countless death threats, threats of violence against his family, and disparaging comments directed at him by individuals from around the world.

43. Defendant Cody admits that the Marion Police Department Facebook post in paragraph 69 of Plaintiff's Complaint is an accurate image of the post.

44. Defendant Cody admits that paragraph 70 of the Facebook post in question accurately quotes the text in the image. Defendant Cody denies that the Facebook post is his own personal post.

45. Defendant Cody admits that paragraph 71 of the Facebook post in question accurately quotes the text in the image. Defendant Cody denies that the Facebook post is his own personal post.

46. Defendant Cody denies that words *not stated* in a Facebook post of the Marion Police Department are evidence of any claim or support Plaintiff's cause of action. As such Defendant denies the allegations set forth in paragraph 72.

47. Defendant Cody denies that words *not stated* in a Facebook post of the Marion Police Department are evidence of any claim or support Plaintiff's cause of action. As such Defendant denies the allegations set forth in paragraph 73. Furthermore, K.S.A. 60-483 is irrelevant in this matter.

48. Defendant Cody denies that the County Attorney's decision not to prosecute various individuals is evidence of any claim by Plaintiff against Defendant. To the extent Plaintiff's Complaint, paragraphs 74-75 actually present a "short plain statement" of facts supporting Plaintiff's claim, Defendant denies these allegations.

Answering further, prior to the media coverage of the search of the *Marion County Record* offices and the other locations, Mr. Ensey participated in the investigation by meeting with Chief Cody about the possible crimes; Mr. Ensey received and responded to emails wherein Defendant Cody sought his legal advice on whether to pursue a criminal investigation; and Mr. Ensey was presented with multiple inquiries about whether the law of Kansas could support probable cause to believe a crime had been committed. From August 7, 2023, through August 11, 2023, Mr. Ensey never advised Defendant Cody or any law enforcement professional that the investigation did not support a probable cause affidavit, nor did he suggest issuing a subpoena to anyone instead of a search warrant, nor did Mr. Ensey advise anyone federal or state law precluded the law enforcement activities proposed by Cody and various individuals and agencies during the investigation.

However, on August 15, 2023, in a personal meeting with Chief Cody and Sheriff Soyez, Ensey advised Chief Cody that **Ensey had not actually read anything** that Cody or the sheriff deputies or others had prepared prior to the August 11, 2023, search warrants being issued.

49. Defendant Cody admits the allegations in paragraph 76 of Plaintiffs' Complaint. However, the KBI's investigation constituted a conflict of interest because KBI Agent Leeds and KBI Supervisor Popejoy were intimately involved in the criminal investigation of Zorn and the issuance of the search warrants before the warrants were approved by the Court on August 11, 2023.

50. Defendant Cody lacks sufficient information to either admit or deny the allegations in paragraph 77 of Plaintiffs' Complaint, and therefore denies the same.

51. Defendant Cody admits the allegations in paragraph 78 of Plaintiffs' Complaint. Since the filing of this Complaint, Defendant Cody resigned from his position with the Marion Police Department.

52. Defendant Cody admits the allegations in paragraph 79 of Plaintiffs' Complaint.

53. Defendant Cody denies the allegations in paragraph 80 of Plaintiffs' Complaint.

54. Defendant Cody admits the allegations in paragraph 81 of Plaintiffs' Complaint.

55. Defendant Cody admits the allegations in paragraph 82 of Plaintiffs' Complaint.

56. Defendant Cody denies the allegations in paragraph 83 of Plaintiffs' Complaint except as to the existence of 42 USC 1983.

57. Defendant Cody denies the allegations in paragraph 84 of Plaintiffs' Complaint. The mere existence of the fact that the letter in question could be or was downloaded from the Kansas Department of Revenue website does not make the document a public record. Defendant Cody conducted several days of investigations, including direct contact with the Kansas Department of Revenue to confirm that the downloaded document in question was, in fact, not a public record prior to proceeding forward with his investigation. Downloading the letter in question under these circumstances was a clear violation of the DPPA and state law.

The day the search warrant was executed, multiple officials from the Kansas Department of Revenue, including Chad Burr, Garrett Kaufman, Desiree Perry, Valerie Pitts, and Craig Bowser were aware of the investigation and stated internally "This appears to be more of a law enforcement matter at this point based upon whatever laws the individual broke to get this information." In addition, the KDOR officials stated that they planned to "begin to investigate"

the file received from the Marion Police Department and were planning to determine the IP address associated with the illegal search.

58. Defendant Cody denies the allegations in paragraph 85 of Plaintiffs' Complaint.

Cody specifically included multiple layers of law enforcement professionals (including the Sheriff's office, the KBI and KDOR officials) and the County Attorney to ensure that the affidavit of probable cause and the ultimate search warrants were appropriate before he proceeded forward. None of the other agencies ever expressed any doubt that Cody's actions were somehow unlawful or improper.

59. Defendant Cody denies the allegations in paragraph 86 of Plaintiffs' Complaint.

Answering further, Gruver directly ignored the directive of the law enforcement officer at the scene executing the lawfully obtained search warrant.

60. Defendant Cody denies the allegations in paragraph 87 of Plaintiffs' Complaint.

Defendant specifically denies that he acted in an unnecessarily violent fashion, noting that shortly after taking her cell phone, Plaintiff Gruver is visible on body cam footage using the alleged injured finger to hold a cigarette. Further, Plaintiff Gruver advised Officer Hudlin at the scene that she had injured (dislocated) her finger at another time so she was "worried about anyone touching it." Gruver refused to complete an injury report.

61. Defendant Cody denies the allegations in paragraph 88-89 of Plaintiffs' Complaint. These allegations are speculation about the Defendant's state of mind for which there is no evidentiary support. Further, Cody did not violate Plaintiff's Constitutional rights in any way.

Defendant Cody had interacted with Gruver for months in a cordial and professional manner despite Gruver's claim intent to expose him for purported misconduct. Cody harbored no

desire to retaliate against Gruver.

62. Defendant Cody denies the allegations in paragraphs 90-92 of Plaintiffs' Complaint.

No evidence of malice or recklessness exists to support a claim for punitive damages. Defendant Cody specifically sought legal advice from the County Attorney before proceeding with an investigation. Defendant Cody performed a thorough investigation, seeking information from a multitude of sources and support from various other law enforcement agencies prior to even preparing an affidavit of probable cause. Defendant Cody did not act alone, nor did he orchestrate a complex conspiracy of other law enforcement officers to carry out illegal or malicious plans against Plaintiff Gruver.

63. Defendant Cody denies the allegations in paragraph 93 of Plaintiffs' Complaint.

Cody specifically included multiple layers of law enforcement professionals to ensure that the affidavit of probable cause and the ultimate search warrant were appropriate before he proceeded forward.

64. Defendant Cody denies the allegations in paragraphs 94 of Plaintiffs' Complaint.

The mere existence of the fact that the letter in question could be downloaded from the Kansas Department of Revenue website does not make the document a public record. Defendant Cody conducted several days of investigations, starting with direct contact with the Kansas Department of Revenue to confirm that the downloaded document in question was, in fact, not a public record prior to proceeding forward with his investigation. Both federal and state law prohibited the download under these circumstances.

The day the search warrant was executed, multiple officials from the Kansas Department of Revenue, including Chad Burr, Garrett Kaufman, Desiree Perry, Valerie Pitts, and Craig

14

Bowser were aware of the police investigation and stated internally "This appears to be more of a law enforcement matter at this point based upon whatever laws the individual broke to get this information." In addition the KDOR officials stated that they planned to "begin to investigate" the file received and were planning to determine the IP address associated with the illegal search.

65. Defendant Cody denies the allegations in paragraph 95 of Plaintiffs' Complaint.

Cody specifically included multiple layers of law enforcement professionals to ensure that the affidavit of probable cause and the ultimate search warrant were appropriate before he proceeded forward.

66. Defendant Cody denies the allegations in paragraph 96 of Plaintiffs' Complaint.

Answering further, Gruver directly ignored the directive of the law enforcement officer at the scene executing the lawfully obtained search warrant.

67. Defendant Cody denies the allegations in paragraph 97 of Plaintiffs' Complaint.

Defendant specifically denies that he acted in an unnecessarily violent fashion, noting that shortly after taking her cell phone, Plaintiff Gruver is visible on body cam footage using the alleged injured finger to hold a cigarette. Further, Plaintiff Gruver advised Officer Hudlin at the scene that she had injured (dislocated) her finger at another time so she was "worried about anyone touching it." Plaintiff Gruver refused to complete an injury report.

68. Defendant Cody denies the allegations in paragraph 98 of Plaintiffs' Complaint.

69. Defendant Cody denies the allegations in paragraph 99 of Plaintiffs' Complaint.

Specifically, Defendant Cody contends that multiple layers of law enforcement professionals participated in the investigation, planning and preparation of the search conducted under the lawfully obtained search warrants. In addition, multiple law enforcement officers at the scene of the search observed Ms. Gruver disregard the directive of Defendant Cody. Finally,

multiple law enforcement officers at the scene of the search did not object or advise Cody that his confiscation of Plaintiff's cell phone violated her constitutional rights.

70.     Defendant Cody denies the allegations in paragraph 100-102 of Plaintiffs' Complaint. These allegations are speculation about the Defendant's state of mind for which there is no evidentiary support.

Defendant Cody had interacted with Gruver for months in a cordial and professional manner despite Gruver's claimed intent to expose him for purported misconduct. Cody harbored no desire to retaliate against Gruver.

No evidence of malice exists to support a claim for punitive damages. Defendant Cody specifically sought legal advice from the County Attorney before proceeding with an investigation. Defendant Cody performed a thorough investigation, seeking information from a multitude of sources and support from various other law enforcement agencies prior to even preparing an affidavit of probable cause. Defendant Cody did not act alone, nor did he orchestrate a complex conspiracy of other law enforcement officers to carry out illegal or malicious plans against Plaintiff Gruver.

71.     Defendant Cody further fully denies any claims asserted by the Plaintiff in her "Prayer for Relief" as her Complaint fails to set forth any viable claim for damages or violation of the law.

## **DEFENSES**

72.     Plaintiff has failed to state a viable claim for relief in whole or in part.

73.     Defendant is entitled to qualified immunity which bars Plaintiff's § 1983 claims. He acted at all times reasonably and in accord with constitutional requirements. In addition, if any provision of the First Amendment or Fourth Amendment prohibited his conduct under these

circumstances, then the law was not "clearly established."

74. Plaintiff was not engaged in Constitutionally protected activity. Further, Defendant's actions did not cause Plaintiff any injury which would chill a person of ordinary firmness from continuing to engage in that protected activity. In addition, Defendant's conduct was not motivated as a response to any protected conduct.

75. Defendant did not cause any damage to Plaintiff. Her own conduct was the sole cause of damages, if any.

76. Plaintiff's speech at issue in this case was not a matter of "public concern" as that term has been defined by the courts.

77. Defendant's interests in promoting the efficiency of the public service under these circumstances are sufficient to outweigh Plaintiff's speech interests (*Garcetti/Pickering* balancing test).

78. Plaintiff's speech at issue in this case was not a motivating factor in any law enforcement action she perceives as adverse to her.

79. Defendant Cody would have investigated the possibility of a crime and requested support and collaboration with other law enforcement agencies to investigate the potential crimes in the absence of Plaintiff's alleged protected speech.

80. Plaintiff's damages, if any, are not of the nature or to the extent alleged.

81. Plaintiff is not entitled to compensatory damages, punitive damages, attorney fees, court costs or any other type of legal or equitable relief.

82. Defendant reserves the right to amend this Answer to assert such additional affirmative defenses and other defenses or limitations upon recovery, as may be revealed by additional investigation or discovery in this action.

WHEREFORE, Defendant respectfully requests that judgment be entered in his favor on all of Plaintiff's claims, for costs of this action, and for such other relief as the Court deems just and equitable.

Respectfully submitted,

s/ Jennifer M. Hill
Jennifer M. Hill, #21213
Edward L. Keeley, #09771
jhill@mcdonaldtinker.com
ekeeley@mcdonaldtinker.com
*Attorneys for Defendant Gideon Cody*
McDONALD TINKER PA
300 West Douglas, Suite 500
Wichita, KS 67202
Telephone:    (316) 263-5851
Facsimile:    (316) 263-4677

## **DEMAND FOR JURY TRIAL**

COMES NOW defendant City of Wichita, Kansas, and hereby demands a trial by jury on all issues herein.

s/ Jennifer M. Hill
Jennifer M. Hill

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of October, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to the following:

> Blake A. Shuart
> Andrew W. Hutton
> J. Darrin Hayes
> Matthew M. Dwyer
> Kaylea D. Knappenberger
> Hutton & Hutton
> 8100 E. 22nd St. N., Bldg. 1200
> Wichita, KS 67226
> *Attorneys for Plaintiff*

                                                s/ Jennifer M. Hill
                                                Jennifer M. Hill