THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DEBBIE K. (DEB) GRUVER

  Plaintiff,

v.

CHIEF GIDEON CODY, et al.,

  Defendants.

Case No. 6:23-01179-DDC-GEB

**DEFENDANTS SOYEZ AND ENSEY'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

  This suit arises out of a search warrant that was executed on the Marion County Record ("the Record"). The warrant was drafted and signed by the Marion City Police Chief and sought evidence that the Record's journalists had illegally accessed another person's information. Plaintiff has filed a Second Amended Complaint ("2AC"), asserting claims against Sheriff Jeff Soyez and County Attorney Joel Ensey ("the County Defendants") in their individual capacities, asserting that the search violated her First and Fourth Amendment rights. As set forth herein, Plaintiff fails to state a plausible claim against either Ensey or Soyez, who are both entitled to qualified immunity.

**FACTUAL BACKGROUND**

  Plaintiff is a former journalist for the Record. (Doc. 56, ¶ 7). She once positively reviewed a restaurant owned by Kari Newell, but Plaintiff and Newell later had a falling out. (Doc. 56, ¶¶ 8-11). The City of Marion hired Gideon Cody as police chief in April 2023. (Doc. 56, ¶ 15). The Record and Gruver began investigating Cody's background, which Cody was aware of. (Doc. 56, ¶¶ 15-18). On August 1, Newell asked Cody to trespass the Record's owner, Eric Meyer and its journalist Phyllis Zorn from her property. (Doc. 56, ¶¶ 19-22). Shortly thereafter, Zorn received a tip that Newell had been illegally driving with a suspended license. (Doc. 56, ¶¶ 25-29). Zorn went to the Kansas Department of Revenue ("KDOR") website and used information received from the tip to verify that

Newell's license was suspended. (Doc. 56, ¶¶ 28-29). The Record declined to publish the information, and instead emailed it to Cody and Soyez. (Doc. 56, ¶ 32). When Newell found out, she accused the Record of illegally obtaining the information. (Doc. 56, ¶ 24).

On August 11, a search warrant application for the Record was attested to by Chief Cody and presented to Magistrate Judge Viar. (Doc. 56, ¶¶ 41-42). The warrant was delivered to Judge Viar by Ensey's staff. (Doc. 56, ¶ 37). The application asserted that Cody had probable cause to believe evidence of violations of K.S.A. 21-6107, identify theft, and K.S.A. 21-5839, unlawful acts concerning computers, would be uncovered. (Doc. 56, ¶ 41; *see also* Exhibit A).[1] According to the affidavit, Meyer sent Cody a copy of private KDOR records, and hinted at possible police misconduct in its acquisition. (Ex. A, p. 5). Cody then met with Newell, who informed him that she did not authorize anyone to access her private information and that she believed she was a victim of identity theft. (Ex. A, pp. 6-7). Cody further reported that Meyer threatened to "come at" Newell if she pursued anything arising out of Zorn accessing her records. (Ex. A, p. 7). Cody recounted the reasons allowed under the KDOR website for the download of such information, which largely track with the federal Driver's Privacy Protection Act, 18 U.S.C. § 2721, *et seq.* (Ex. A, p. 6). According to Cody, Zorn's download of Newell's information did not satisfy any of those conditions. (Ex. A, p. 7). The 2AC lists several alleged deficiencies or misleading omissions contained in the warrant application. (Doc. 56, ¶¶ 44-53). Neither Soyez nor Ensey are alleged to have knowledge of any of those issues or the existence of the underlying facts that were omitted. The warrants were executed by law enforcement officers from both the City Police Department and the Sheriff's office. (Doc. 56, ¶¶ 141-143).

According to Plaintiff, "upon information and belief," Soyez was friends with Cody. (Doc. 56, ¶ 119). Plaintiff claims Soyez harbored animus towards the Record, including Plaintiff, but that

---

[1] The warrant and application, which are referred to extensively in the Complaint, are attached as Exhibit A. *Kang Sik Park v. First Am. Title Ins. Co.*, 743 F. App'x 902, n. 2 (10th Cir. 2018).

conclusion is not accompanied by any well pleaded facts. (Doc. 56, ¶ 122). There are no allegations, not even conclusory ones, suggesting Soyez had any animus towards Plaintiff, personally. Plaintiff asserts that Soyez met with Cody and agreed to join the investigation of the Record, but does not explain what involvement Soyez had in the investigation. (Doc. 56, ¶ 128). Soyez is not alleged to have done any investigation or contributed any substance to any warrant applications, other than suggesting adding a fourth warrant for Meyer's home, which has nothing to do with Plaintiff. (Doc. 56, ¶ 132). Soyez did not present the warrants to Judge Viar, and did not participate in the execution of any of the warrants. After the warrants were executed, Soyez provided pizza to officers that executed the warrants. (Doc. 56, ¶¶ 139-141).

Plaintiff also claims Ensey is responsible for Cody's warrant. Plaintiff relies on Cody's allegation that Ensey approved Cody moving forward with the investigation, even though Ensey has no authority over Cody or Cody's investigations. Cody also claims Ensey did not read any documents that Cody sent to him, including the search warrant affidavits and applications. (Doc. 56, ¶ 88). On the Monday before the warrants were signed and executed, Plaintiff alleges Cody texted Ensey asking Ensey to call Cody to talk about his investigation. Ensey responded that he would call. (Doc. 56, ¶ 90). The next day, Cody sent Ensey a lengthy email outlining theories about crimes that may have been committed. (Doc. 56, ¶ 91). There is no allegation that Ensey reviewed or acknowledged the email. On Wednesday, August 9, Cody texted Ensey again, asking Ensey to call Cody. (Doc. 56, ¶ 92). There is no allegation that Ensey reviewed, responded to, or acknowledged that text. According to the 2AC, Cody wanted to keep Ensey in the loop and told him KBI would take the lead in the investigation. (Doc. 56, ¶ 93). Soyez also spoke with Ensey on August 9, advising that Ensey hire special counsel if Cody's investigation eventually turned into a case to be prosecuted. (Doc. 56, ¶ 94). Ensey later spoke to KBI investigator Todd Leeds, who gave Ensey the impression that KBI would take additional investigative steps. (Doc. 56, ¶ 97). On Thursday, August 10, Cody emailed the search

warrant applications to Ensey. (Doc. 56, ¶ 98). At this point in the 2AC, Plaintiff begins citing and relying on an email Ensey sent to himself on August 12. That email is attached as Exhibit B.

The email reveals that Ensey was not working when the warrants were emailed on Thursday, August 10. (Ex. B). The next day, Ensey noticed the emails had been sent, but did not fully review the warrants. (Ex. B; Doc. 56, ¶ 99). Ensey noted that he normally reviews searched warrants "for form." (Ex. B). Although Ensey was aware Cody was pursuing search warrants, Ensey was not familiar with the subject matter or their content. (Ex. B; Doc. 56, ¶ 100). As Ensey was busy preparing for preliminary hearings, and before Ensey had fully reviewed the warrant applications, Cody called Ensey and informed Ensey that Cody had a team on standby to execute the warrants. (Ex. B; Doc. 56, ¶ 101). Ensey expressed frustration at Cody's insistence and had his office manager run the warrants up to Judge Viar's office to "let the judge decide" on the warrants. (Ex. B, Doc. 56, ¶ 101). There is no allegation that Ensey approved or presented the warrants to Judge Viar. The only allegations are that, at Cody's urging, his office staff delivered Cody's warrants to Judge Viar for her review. Ensey did not substantively review the warrants until after they were executed, at which time he expressed concerns with their particularity. (Ex. B). On August 16, Ensey announced he did not feel the warrants provided a legally sufficient nexus between the alleged crime and the places to be searched and submitted a proposed order for the return of any items. (Doc. 56, ¶ 117). Plaintiff lodges an entirely conclusory allegation that Ensey was "substantively involved with the investigative and the administrative phase of the investigation," but that conclusion is not supported by well-pleaded facts. (Doc. 56, ¶ 118). At most, the 2AC alleges that Ensey was aware that Cody and the KBI were investigating the Record, and were considering executing search warrants, before receiving warrants that he did not review in detail, and had delivered to the Judge's chambers at Cody's insistence.

**LEGAL STANDARD**

Under Rule 12(b)(6), the Court must decide "whether the complaint contains enough facts to

4

state a claim to relief that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). In making this determination, the Court accepts as true all well-pleaded allegations in the complaint, though it need not accept legal conclusions. *Lee v. Reed*, 221 F. Supp. 3d 1263, 1273 (D. Kan. 2016). Complaints brought under § 1983 against individual government actors have "a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." *Rider v. Werholtz*, 548 F. Supp. 2d 1188, 1195 (D. Kan. 2008) *(*quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)).

## ARGUMENT AND AUTHORITY

### I.     Soyez is entitled to qualified immunity on Count I.

There is a presumption in favor of qualified immunity for public officials acting in their individual capacities, unless Plaintiff proves otherwise. *Hidahl v. Gilpin County Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991). Once qualified immunity is asserted, Plaintiff has the burden to meet a two-part test. *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir 2009). She must first establish a defendant violated a federal right. *George v. Newman*, 726 F. App'x 699, 703 (10th Cir. 2018). Next, she must show that the right was clearly established. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007).

#### a.     Plaintiff fails to state a First Amendment claim against Soyez.

Count I claims Soyez acted in retaliation for Plaintiff's exercise of her First Amendment rights. To state a First Amendment retaliation claim, Plaintiff must allege: (1) constitutionally protected activity, (2) an injury that would chill a person of ordinary firmness from continuing to engage in such activity, and (3) that the defendant's actions were substantially motivated as a response to the constitutionally protected activity. *Martley v. Basehor*, 537 F. Supp. 3d 1260, 1267 (D. Kan. 2021).

Plaintiff does not allege Soyez's personal involvement. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). There must be an affirmative link between the defendant's participation and the alleged constitutional violation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Soyez did not execute the warrants, and the allegations of Soyez's involvement in the investigation or drafting of the warrants are conclusory. There are no well pleaded facts suggesting that he did any investigation or contributed anything of substance to the applications. And specifically, as relates to Plaintiff, the 2AC does nothing to tie Soyez to any injuries she allegedly suffered. Under § 1983, Soyez can only be liable if the further alleged unlawful events would not have occurred but for his conduct, and "there was no unforeseeable intervening acts superseding their liability." *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012). Plaintiff was not a target of the investigation or the warrants. And so, even if the Court accepts Plaintiff's conclusory allegations about Soyez's involvement in the investigation or formulation of the warrants, there are no allegations that Soyez had any intent to target Plaintiff or could have foreseen that Cody would seize Plaintiff's phone. Plaintiff's name is not mentioned in any of the warrant applications. Soyez cannot be held responsible for Cody's unforeseeable intervening act.

Plaintiff also fails to allege the third element of a retaliation claim. Although the 2AC asserts that Plaintiff was investigating Cody, and that Cody was aware Plaintiff was doing so, there are no similar allegations regarding Soyez. (Doc. 56, ¶¶ 17-18). Plaintiff was not investigating Soyez, and Soyez was not aware of any investigation of him, or the investigation of Cody. There are no allegations suggesting that Soyez had unlawful animus towards Plaintiff or was motivated in any way as a response to anything Plaintiff published. In short, there are no allegations suggesting Soyez was motivated in response to Plaintiff's protected conduct. Count I should be dismissed.

### b. **Plaintiff fails to allege violation of a clearly established right.**

Under the qualified immunity framework, "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019).

> A plaintiff may show clearly established law by pointing to either a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, existing at the time of the alleged violation. To be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. Although there need not be a case directly on point, an officer cannot be said to have violated a clearly established right unless the right'. contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it.
>
> Courts must not define clearly established law at a high level of generality. Instead, the clearly established law must be particularized to the facts of the case. The dispositive question is whether the violative nature of particular conduct is clearly established. Otherwise, plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

*Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018)(citation cleaned up). Plaintiff claims Soyez violated her First Amendment rights with a retaliatory search and seizure, even though Soyez is not alleged to have had any animus towards her, added any substance to the investigation or applications or participated in the search. The allegations against Soyez are mostly conclusory, and amount to the fact that he may have been aware of the investigation and provided food to officers after the warrants were executed. Under those facts, it cannot be said that he violated a clearly established First Amendment right. *Foote*, 118 F.3d at 1423.

There are also no allegations that Soyez even had awareness of protected action by Plaintiff, let alone allegations that he was motivated by any such conduct. As the Tenth Circuit has recognized, in "a First Amendment retaliation claim, we have emphasized that the evidence indicated that each individual defendant had such a substantial motive." *A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1163 (10th Cir. 2016). The qualified immunity standard requires conduct that "every reasonable official" would have understood to be a constitutional violation. *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). No reasonable officer would know he was unlawfully retaliating in response to a plaintiff's exercise of her First

Amendment rights if he is not alleged to have even been aware that those rights were exercised. Soyez is entitled to qualified immunity on Count I.

## II. Soyez is entitled to qualified immunity on Count II.

### a. Plaintiff fails to state a Fourth Amendment claim against Soyez.

Plaintiff's allegations of Soyez's involvement in the investigation and/or drafting of the warrants are entirely conclusory and need not be accepted as true. She simply alleges that Soyez met with Cody, and concludes that he agreed to join the investigation and once discussed the applications with Cody. There are no allegations about what Soyez did. He is not alleged to have drafted anything, investigated anything, or even been aware of the contents of the warrants. Perhaps recognizing Soyez's non-involvement, Plaintiff tries to pin liability on Soyez for "supplying" deputies to draft and execute the warrants. But the fact that subordinates assisted another law enforcement agency is not illegal, and Soyez is not automatically liable for the conduct of his deputies.

> [Section] 1983 does not authorize liability under a theory of respondeat superior. Thus, in the context of supervisory liability, the plaintiff . . . must show an affirmative link between the supervisor and the constitutional violation. This requires more than a supervisor's mere knowledge of his subordinate's conduct. Rather, a plaintiff must satisfy three elements to establish a successful § 1983 claim against a defendant based on his or her supervisory responsibilities: (1) personal involvement; (2) causation; and (3) state of mind.

*Lieberenz v. Wilson*, 2024 U.S. App. LEXIS 14238, *24 (10th Cir. June 12, 2024) (citation cleaned up).

Plaintiff's allegations about Soyez's involvement and state of mind are completely conclusory. As is any suggestion of causation, where none of Soyez's deputies had any interaction with Plaintiff. As noted above, it was not foreseeable that either Christner typing up Cody's investigation or Sheriff's deputies assisting in the City's execution of judge-signed warrants caused the alleged injuries Cody inflicted on Plaintiff. Which gets to another issue with Plaintiff's Fourth Amendment claim: she lacks standing to bring it against Soyez or Ensey. Nothing about the warrant related to Plaintiff in any way. It called for a search of the Record's devices, based on conduct related to Zorn and Eric Meyer.

> The concept of standing under the Fourth Amendment focuses on whether the person challenging the legality of the search at issue was actually the victim of that search or seizure. In order to have standing to contest a search, an individual must have a legitimate expectation of privacy in the invaded place.

*Wilkins v. Skiles*, 2005 U.S. Dist. LEXIS 28503, *15 (D. Kan. Oct. 20, 2005) (internal quotation marks and citations omitted). The Record, not Plaintiff, was the target of the search warrant. "It is unquestioned that there is a diminished expectation of privacy in the workplace." *McCarty v. City of Bartlesville*, 8 F. App'x 867, 877 (10th Cir. 2001) (internal quotation marks and citations omitted). When an employee challenges the search of her workplace, the Court engages in a "particularized analysis" of whether the employee had a reasonable expectation of privacy. *United States v. Vigil*, 2006 U.S. Dist. LEXIS 97296, at *11 (D.N.M. Feb. 7, 2006). There are no allegations that Plaintiff had any reasonable expectation of privacy in the Record's items or the evidence targeted in the search warrant. Cody's targeting of her was outside of the scope of the warrant, and therefore, unforeseeable to Soyez. Neither Soyez nor his deputies had any interaction with Plaintiff. Plaintiff fails to state a Fourth Amendment claim against Soyez.

### b. Plaintiff fails to allege violation of a clearly established right.

Because Plaintiff fails to identify with specificity what Soyez did to contribute to the issuance of the warrants, she fails to allege a violation of a clearly established right.

> In the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct. Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists. A defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff.

*Stonecipher v. Valles*, 759 F.3d 1134, 1141-42 (10th Cir. 2014) (citation cleaned up). This objective test is not based on 20/20 hindsight: "[q]ualified immunity applies equally to reasonable mistakes of law and fact." *Id.* at 1142. When applying this framework to search warrant cases, the analysis is highly

context-dependent, which requires Plaintiff to identify a very similar case to meet her burden. *See Kapinski v. City of Albuquerque*, 964 F.3d 900, 910 (10th Cir. 2020).

Soyez is not alleged to have conducted any investigation. He is not alleged to have drafted the warrant. He is not alleged to have been aware of the contents or the warrant applications or any false statements or omissions related thereto. Even if the Court accepts Plaintiff's conclusory allegations as true, Soyez is alleged to have had meetings to discuss Cody's investigation, allowed his officers to assist another law enforcement agency, and provided food to officers after they executed a judge-signed warrant. The Defendants are aware of no cases in which the Tenth Circuit or Supreme Court have determined that similar conduct constituted a Fourth Amendment violation. Soyez is entitled to summary judgment.

### III. Ensey is entitled to qualified immunity on Count II.

#### a. Plaintiff fails to state a Fourth Amendment claim against Ensey.

##### 1. *Ensey did not cause any of Plaintiff's alleged injuries.*

Ensey is the Marion County Attorney. In *Mink v. Knox*, the Tenth Circuit held that a prosecutor can be liable "for causing the issuance of an unconstitutional search warrant." *Eckert v. Dougherty*, 658 F.App'x 401, 406 (10th Cir. 2016) (citing *Mink v. Knox*, 613 F.3d 995, 1001-1003 (10th Cir. 2010)). But a prosecutor is not *per se* liable anytime an unconstitutional search warrant issues. On the contrary, the *Mink* court recited the relevant law on alleging causation in a § 1983 claim. Importantly, the Court noted that a "plaintiff may demonstrate causation by showing an affirmative link between the constitutional deprivation and the officer's **exercise of control or direction**." *Mink*, 613 F.3d 995, 1001-1002 (emphasis added). In *Mink*, the plaintiff alleged that the prosecutor "reviewed and approved" the relevant search warrant affidavit, which the Tenth Circuit determined was facially unconstitutional. *Id.* at 999. That case arose from Colorado, where a statute requires that prosecutors render legal advice regarding the preparation and review of search warrant affidavits. *See* Colo. Rev.

Stat. § 20-1-106.1. There is no such statute in Kansas. Attached to the warrant at issue in *Mink* was an affidavit from the prosecutor herself in which she noted that she reviewed the warrant in compliance with that statute. *Id.* at 1002. Further, the plaintiff in *Mink* alleged that the prosecutor reviewed, approved, and authorized the search warrant. *Id.* at 1002-1003.

The allegations in the 2AC are much different than those in *Mink*. Plaintiff alleges that Cody claims Ensey approved Cody "moving forward" with the investigation,[2] which is much different than authorizing or approving a search warrant. The warrant applications were emailed to Ensey when he was out of the office on August 10, 2023. Ensey did not review them. On August 11, 2023, Ensey checked his email and opened the warrants, but did not fully review them, and certainly did not draft, edit, approve, or authorize them. That same morning, Cody informed Ensey that he had a team ready to execute the warrants, and so, Ensey had his staff provide the warrants to the Court to "let the judge decide." Although Plaintiff provides conclusory allegations about her interpretation of Ensey's notes, the factual allegations reveal Ensey did not review, approve, or authorize the warrants. Rather, he was aware Cody was working on the warrants, and when Cody was ready to execute the warrants, before Ensey had a chance to review them, Ensey had his staff take Cody's warrants to the magistrate judge. Control or direction are not alleged.

Plaintiff's myriad of allegations and implausible conclusions about Ensey's role reflect a misunderstanding of his duties. Ensey is not an investigator. He is not a police officer. There are no allegations that he investigates crimes or controls investigations because, indeed, he does not. Cody did not work for or answer to Ensey, nor did Ensey work for Cody. As the prosecutor, Ensey makes charging decisions and prosecutes cases that are brought to him when law enforcement is done investigating them, which is why Soyez recommended a special prosecutor if Cody's investigation ever

---

[2] Even though Cody does not work for Ensey, does not require Ensey's approval, and started and continued the investigation on his volition.

became a "case." That is the same reason why Cody and the KBI attempted to keep Ensey in the loop, because ultimately, if criminal charges were sought, that would have been Ensey's responsibility. But it was not his responsibility, yet. Unlike the prosecutor in *Mink*, he provided no advice or input into the investigative process. And so, Plaintiff does not allege control and direction by Ensey. Courts have found direct participation by officers who ordered a search or swore out the warrant affidavit. *Poolaw v. Marcantel*, 565 F.3d 721, 733 (10th Cir. 2009). And as noted above, the Tenth Circuit has found direct participation where a prosecutor provided input, advice, and approval of a search warrant. *Mink*, 613 F.3d at 998-99. But direct participation is not adequately alleged where a defendant merely knows about or tacitly approves an allegedly unlawful scheme. And awareness is all that is alleged, here. *Tachias v. Los Lunas Sch. Bd. of Ed.*, 2022 U.S. Dist. LEXIS 174616, at *29 (D.N.M. Sept. 27, 2022).

2.  *Plaintiff's injuries were not a foreseeable result of Ensey's conduct.*

Even if Ensey had authorized or approved the warrant, Plaintiff still fails to state a claim against him. As noted regarding the claims against Soyez, there are no allegations indicating that Ensey could have foreseen that Cody would approach or harm Plaintiff in executing a warrant that related only to the Record and Zorn. Nor are there any allegations setting forth Plaintiff's standing to challenge a warrant that did not target her in any way.

b.  **Plaintiff fails to allege violation of a clearly established right.**

*Mink* is the key case governing prosecutor liability for the issuance of a search warrant. There, the Tenth Circuit held a prosecutor can be liable for approving or authorizing a facially unconstitutional search warrant. *Mink*, 613 F.3d at 1002-1003. Importantly, in *Mink* the prosecutor was required by law to provide legal advice about the validity of search warrants, and had, in fact, done so. *Id.* As the New Mexico District Court later recognized when engaging in the qualified immunity analysis, the law governing prosecutors' approval of warrant applications is "limited." *Eckert v. City of Deming*, 2015 U.S. Dist. LEXIS 176612, at *179 (D.N.M. Oct. 31, 2015). But there are

12

no cases holding that a prosecutor is liable for failing to review and approve a search warrant, which is what is alleged here. Unlike Colorado, Kansas law does not require that Ensey review the warrant applications or provide legal advice regarding their substance. And the allegations are not that Ensey fully reviewed and approved the warrants, they are that he did not review them closely enough.

The only guidance from the Tenth Circuit holds that a prosecutor can be liable for reviewing and approving a search warrant and causing it to be issued. That is not what Ensey did. For a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate.

> While the Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality, it has also explained that officials can still be on notice that their conduct violates established law even in novel factual circumstances. But other binding precedent informs that the clearly established law must be particularized to the facts of the case. And plaintiffs may not identify their claim through extremely abstract rights because this would convert the rule of qualified immunity into a rule of virtually unqualified liability. Ultimately, this court must assess whether existing precedent [has] placed the statutory or constitutional question beyond debate.

*Surat v. Klamser*, 52 F.4th 1261, 1276 (10th Cir. 2022) (citation cleaned up). A recent example of the Tenth Circuit's application of the qualified immunity standard reveals how similar the alleged unlawful conduct must be to the applicable binding precedent. In *Surat*, Ms. Surat brought an excessive force claim against a defendant officer; the officer had performed a takedown maneuver in response to her "minimal" resistance. *Id.* at 1276. At the time of the incident, it was clearly established that an officer cannot perform a takedown maneuver on a suspect who provided no resistance. *Id.* at 1277 (citing *Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012). The Tenth Circuit recognized that, because Ms. Surat provided minimal resistance, the *Morris* case did not "squarely govern" the facts of her case. *Id.* Even though Ms. Surat's resistance was minimal, the Court noted that the presence of "some level of resistance" meaningfully distinguished her case. *Id.*

Similarly here, *Mink* does not squarely govern this case. In *Mink*, the prosecutor took clearly

13

defined steps: she was alleged to have reviewed, approved, and authorized the search warrant application. She had an <u>active</u> role. Here, Ensey is alleged to have not fully reviewed the warrant application and did not approve the warrant application. The criticisms of Ensey are that he was <u>too passive</u>. These distinctions meaningfully distinguish this case from *Mink*. There is no precedent that would indicate, based on these allegations, Ensey can be liable for the issuance of Cody's search warrant.

Further, even if Ensey had approved the search warrant, this case is also distinct from *Mink* in that it is not clearly established that the warrant application was facially unconstitutional. Importantly in *Mink*, the Court cited binding precedent for the proposition both that the alleged underlying criminal conduct was obviously protected First Amendment activity and that the warrant lacked particularity. Specifically, it would have been obvious from *Pring v. Penthouse Int'l*, 695 F.2d 438 (10th Cir. 1982) that the warrant was seeking probable cause based on the plaintiff's satirical comments, which are protected under the First Amendment. *Mink*, 613 F.3d at 1004-1010. Additionally, the *Mink* Court relied on its prior precedent to note that it was clearly established that the search warrant lacked particularity because "[t]he warrant authorized the search and seizure of all computer and non-computer equipment and written materials in Mr. Mink's house, without any mention of any particular crime to which they might be related." *Id.* at 1011.

Neither is true here. "Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry." *A.M.*, 830 F.3d at 1140. (internal quotation marks and citations omitted). Had he reviewed the warrant, it would not have been unreasonable for Ensey to conclude that there was probable cause. The application sought evidence of identity theft and unlawful acts concerning computers. Identify theft is defined to include using personal identifying information to defraud another for some benefit or to subject the victim to harm. K.S.A. 21-6107(a). Unlawful acts concerning computers include accessing, without authorization, any computer system or network.

14

K.S.A. 21-5839(a)(5). Cody attested that Newell did not authorize any person to access her records, and the Complaint asserts that Zorn and Meyer used Newell's identifying information to do just that. Cody further attested that KDOR's website provided an exclusive list of authorized reasons why one can access another's KDOR records. From the face of the warrant, none of the justifications set forth on the KDOR site applied. From its face, the warrant was not "so lacking" in probable cause that any reasonable official would know it should not issue. Unlike in *Mink*, there is no clearly established precedent that would make it obvious that the warrant was seeking probable cause on an unjustifiable standard.

The same is true regarding particularity. Unlike *Mink*, the warrant here referenced specific crimes to which the search warrants were tied. While it is true that warrants for computer searches are invalid if they contain no limiting principle, a warrant will generally pass the particularity test "if they limit their scope either to evidence of specific [] crimes or to specific types of material." *United States v. Christie*, 717 F.3d 1156, 1165 (10th Cir. 2013) (internal quotation marks and citations omitted). In reviewing a warrant, the Court can look at both the warrant itself, and the supporting affidavit, to determine if the scope of a computer search is sufficiently narrow. *United States v. Burgess*, 576 F.3d 1078, 1091-92 (10th Cir. 2009). The warrant at issue here does not allow for the indiscriminate search through devices; rather, giving "due regard to context," the warrant was limited in scope to the search for documents or communications related to the possession and distribution of Newell's private identifying information. *Id.* For these reasons, Ensey is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, the claims against the Ensey and Soyez should be dismissed with prejudice.

Respectfully submitted,

WATKINS CALCARA, CHTD.

/s/ JEFFREY M. KUHLMAN
Jeffrey M. Kuhlman, #26865
1321 Main Street - Suite 300
P.O. Drawer 1110
Great Bend, Kansas 67530
(620) 792-8231 Fax (620) 792-2775
jkuhlman@wcrf.com
Attorney for Defendants Jeff Soyez and Joel Ensey

**CERTIFICATE OF SERVICE**

    I hereby certify that on this 29th day of August, 2024, I electronically filed the above and foregoing Memorandum in Support of Motion to Dismiss by using the CM/ECF system which will send a notice of electronic filing to registered counsel.

/s/ JEFFREY M. KUHLMAN
Jeffrey M. Kuhlman, #26865